UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STEPHANIE A. NILSON-BORRILL, )<br>)<br>PLAINTIFF )<br>)<br>v. )<br>)<br>SCOTT BURNHEIMER, ET AL., )<br>)<br>DEFENDANTS ) | CIVIL NO. 07-98-P-H |

**DECISION AND ORDER ON DEFENDANT
BURNHEIMER'S MOTION TO DISMISS**

Under 42 U.S.C. § 1983, prison inmates can bring claims against prison officials for "deliberate indifference" to their health and safety. Unlike section 1983, the Maine Civil Rights Act specifies physical force or violence, or threats of physical force or violence, as a condition of liability. 5 M.R.S.A. § 4682(1-A). But Maine caselaw analyzes the statute as if it were identical to 42 U.S.C. § 1983. I conclude, therefore, that the Maine Civil Rights Act permits a deliberate indifference claim against a corrections superintendent based solely upon violence that a prisoner suffered at the hands of a fellow inmate. I also rule that I can determine by consulting Maine statutes that the Maine Corrections Center at Windham is a state institution and that claims against its officers in their official capacities are prohibited in federal court by the Eleventh Amendment.

**BACKGROUND**

Stephanie Nillson-Borrill, a former prisoner, has sued Scott Burnheimer, the Maine Correctional Center ("MCC") Superintendent, in both his individual and his official capacity. She seeks damages for rape by a male prisoner while she was incarcerated at MCC. The Superintendent has filed a motion to dismiss all the official capacity claims against him, federal and state, as well as any individual capacity claims that are based on the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4682. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**OFFICIAL CAPACITY**

A lawsuit against a state official in his official capacity is a lawsuit against the State, and is prohibited in federal court by the Eleventh Amendment. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). Nillson-Borrill does not dispute this legal principle, Pl.'s Opp'n to Mot. to Dismiss ("Opp'n") at 11 (Docket Item 5) (stating that the defendant's argument that a state official cannot be sued in his official capacity is "legally correct"). However, she says that it is "unclear at this point whether the MCC is, in fact, a state facility." Id.

Maine statutes clearly demonstrate that MCC is a state facility. Title 34-A of the Maine Revised Statutes deals with corrections. Section 1001(1) defines "chief administrative officer of a correctional facility" to mean the superintendent of the Maine Correctional Center along with other correctional facility heads (such as the warden of the Maine State Prison). The statute defines "correctional facility" as meaning the Maine Correctional Center (along with other institutions) "or any

2

other entity *which falls under the jurisdiction of the department* [of corrections]," and explicitly excludes "a county jail, holding facility or short-term detention area," section 1001(6) (emphasis added). It establishes a Department of Corrections "to be responsible for the direction and general administrative supervision, guidance and planning of adult and juvenile correctional facilities and programs within the State," section 1202.  It treats county and municipal detention facilities as distinct, section 1208.  And it explicitly establishes "the Maine Correctional Center, formerly known as the Men's Correctional Center, located at South Windham for the confinement and rehabilitation of the following persons," listing categories of persons who have been "committed to the custody of the department [of corrections)," section 3401.  It then goes on to delineate the duties and powers of the MCC Superintendent, section 3402, imposes requirements concerning the conditions of confinement for MCC prisoners, sections 3403-4, and includes provisions for the powers and the uniforms of MCC employees, section 3405.[1]  It cannot seriously be maintained that MCC is not a state institution. The official capacity claims, therefore, are **DISMISSED** under Fed. R. Civ. P. 12(b)(6).[2]

---

[1] Even if the statutory provisions were not clear, it is generally known that MCC is a state facility, see http://www.maine.gov/corrections/Facilities/mcc/index.htm.  I could take judicial notice of that fact without converting the defendant's motion to dismiss into a motion for summary judgment.  Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

[2] The State of Maine is also not a "person" within the meaning of 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682.  The plaintiff does not contest this legal principle, Opp'n at 4.  Since MMC is a state institution, that is an alternate ground for granting the motion to dismiss.

**INDIVIDUAL CAPACITY**

Nillson-Borrill bases her claims against the MCC Superintendent in his individual capacity on allegations of "deliberate indifference."  Compl. ¶ 30 ("Plaintiff was incarcerated under conditions posing a strong likelihood and/or substantial risk of serious harm, including without limitation, Defendants' deliberate indifference with respect to the lack of adequate supervision by prison guards to ensure [Plaintiff would not be raped]");  Opp'n at 2 ("Defendants had a duty to prevent this known risk from harming Plaintiff and Defendant deliberately disregarded the substantial risk to Plaintiff's health and safety").  Damages are available under 42 U.S.C. § 1983 for a corrections officer's deliberate indifference to the health and safety of an inmate, Burrell v. Hampshire County, 307 F.3d 1 (1st 2002), and the MCC Superintendent has not moved to dismiss the section 1983 claim.  He does argue that the MCRA claim should be dismissed for failure to state a claim.

> The Maine Civil Rights Act provides a cause of action:
>
>> [w]henever any person . . . *intentionally interferes or attempts to intentionally interfere by physical force or violence* against a person, damage or destruction of property or trespass on property or by the *threat of physical force or violence* against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or [other legal right].

5 M.R.S.A. § 4682(1-A) (emphasis added).  Since section 4682 applies to someone who intentionally interferes with a Constitutional right "by physical force or violence against a person . . . or by the threat of physical force or violence against

4

a person," the Superintendent argues that the MCRA claim must be dismissed: "[n]owhere in [the] complaint is there any allegation that [the defendant] used or threatened physical force or violence against [the plaintiff]." Reply to Opp'n to Mot. to Dismiss ("Reply") at 4 (Docket Item 6). Nillson-Borrill disagrees, arguing that liability under the MCRA is no different than liability under section 1983, see Opp'n at 4 n.3.

Despite the significant difference in wording between the MCRA and section 1983 (the latter has no reference to physical force and violence), courts routinely combine section 1983 analysis with MCRA analysis. See, e.g., Jenness v. Nickerson, 637 A.2d 1152, 1159 (Me. 1994) ("qualified immunity analysis under section 1983 also applies to the MCRA"); Hegarty v. Somerset County, 848 F. Supp. 257 (D. Me. 1994) (same); McLain v. Milligan, 847 F. Supp. 970, 974 n.5 (D. Me. 1994) (applying section 1983 case law to MCRA claims based on the parties' stipulation); Forbis v. Portland, 270 F. Supp.2d 57, 61 (D. Me. 2003) ("The disposition of the federal claim controls the plaintiff's claim under the Maine Civil Rights Act . . . because the latter is patterned on [section] 1983."). Most significantly, in Norton v. Hall, a "deliberate indifference" case, the Law Court declined to address the Maine Civil Rights Act claims separately because "[t]he analysis of such claims is similar to federal civil rights claims." 834 A.2d 928, 933 n.3 (Me. 2003). It then discussed only section 1983 case law regarding "deliberate indifference." Id. at 934 (explaining that, under federal case law, deliberate indifference might apply in a custodial prison situation). I follow the Law Court's interpretation of this Maine statute, and do not distinguish liability under the

MRCA from liability under section 1983 for "deliberate indifference" to the safety of an inmate.[3]

I therefore **DENY** the motion to dismiss the MCRA claim.

**SO ORDERED.**

**DATED THIS 31ST DAY OF AUGUST, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[3] I do note that the Law Court has never directly addressed the requirement of violence or threats of violence in a "deliberate indifference" context. U.S. District Judge Gorton, interpreting the similarly worded Massachusetts Civil Rights Act, concluded:
> [Mass]CRA liability is . . . lacking [because the plaintiff] has offered no evidence that the officer defendants interfered or attempted to interfere with his rights by means of threats, intimidation or coercion . . . . Here, plaintiff's allegations can accurately be characterized as deliberate inattention to his health and safety needs. Deliberate inattention is the antithesis of threats, intimidation or coercion. [The plaintiff] offers a cursory opposition to the motion for summary judgment on the MCRA claim which, in essence, contends that if his claims are strong enough to survive summary judgment on the § 1983 claims then they can sustain a challenge to the MCRA claim. That supposition effectively ignores the critical distinction between the two statutes, namely that a deprivation of constitutional rights under the state statute must be by means of threats, intimidation or coercion.

Carroll v. City of Quincy, 441 F. Supp.2d 215, 226 (D. Mass., 2006). If the issue remains pertinent after the factual record is settled in this case and if the circumstances are appropriate, I would entertain a later motion to certify the question to the Law Court. See Me. R. App. P. 25(a).